[Civ. No. 42429. First Dist., Div. One. Nov. 28, 1978.]

FREDDIE WAYNE SALLAS et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE SAN LEANDRO-HAYWARD JUDICIAL DISTRICT OF ALAMEDA COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

738

---

## COUNSEL

James C. Hooley, Public Defender, Robert H. Betzenderfer and Harold G. Friedman, Assistant Public Defenders, for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Alvin J. Knudson, Deputy Attorneys General, for Real Party in Interest and Respondent.

---

## OPINION

**ELKINGTON, J.**—The appellants of this appeal (hereafter the accuseds), 25 in number, were separately proceeded against in the

municipal court by complaints charging commission of "a misdemeanor," to wit:

"A violation of section 11550 of the Health and Safety Code of California, in that said defendant did unlawfully and wilfully use and was under the influence of a controlled substance."

The controlled substance of each complaint was otherwise undesignated and undescribed.

Each of the accuseds demurred, as permitted by Penal Code section 1004, to the complaint against him on the grounds: (1) That "the facts stated [do] not constitute a public offense," and (2) "That it does not substantially conform to the provisions of [Pen. Code, §] 952" by failing to use "words sufficient to give the accused notice of the offense of which he is accused."

The demurrers were overruled by the municipal court. Thereafter, in a consolidated proceeding, the several accuseds petitioned the superior court for a writ of prohibition, seeking thereby to enjoin further prosecution of the charges. That court denied the requested relief and entered judgment accordingly. The appeal before us was taken from the judgment of the superior court.

Health and Safety Code section 11550, the statute upon which the accuseds' complaints were founded, provides:

"No person shall use, or be under the influence of any controlled substance which is (1) specified in subdivision (b) or (c) of Section 11054, specified in paragraph (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or (2) which is a narcotic drug classified in Schedule III, IV, or V, excepting when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. It shall be the burden of the defense to show that it comes within the exception. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court have the power to absolve a

person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

Sections 11054 and 11055, and schedules III, IV and V, alluded to in the statute, refer to Health and Safety Code sections 11054 (schedule I), 11055 (schedule II), 11056 (schedule III), 11057 (schedule IV) and 11058 (schedule V). They relate generally to schedules I, II, III, IV and V of controlled substances as established by title 21, United States Code, section 812. The controlled substances of such sections and schedules, the use or being under the influence of which is proscribed by section 11550, include about 120 individually specified drugs or substances, together with their "isomers, esters, ethers, salts, and salts of isomers, whenever [their existence] is possible within the specific chemical designation: . . ." They apparently embrace narcotics and nonnarcotics, hallucinogens and nonhallucinogens, stimulants and depressants. Some have "a high potential for abuse," some a "lesser" and others a "low" such potential. Some have "a currently accepted medical use" while others have none. With some there is a lack of "accepted safety" in their use. Others "may lead to severe psychological or physical dependence," or to "moderate or low physical dependence," or to "limited" psychological dependence. And of course the objective symptoms and behavior of those under the influence of the substances will vary widely according to which is used.

In the same Health and Safety Code sections and schedules are listed some 40 other controlled drugs and substances, the use or being under the influence of which is *not* proscribed by Health and Safety Code section 11550. Among those exceptions, for reasons not made known to us, are such well-known drugs as phencyclidine (PCP or angel dust), lysergic acid diethylamide (LSD) and amphetamine (speed).

California, of course, has a weighty public interest in the suppression of traffic in and the abuse of controlled substances, by which term narcotics and dangerous drugs have come to be known. Ordinarily in criminal drug violations the identity of the substance is readily known, for it will probably have been seized and made available for chemical analysis. Little difficulty is there encountered in advising the accused of the precise nature of the charge against him. But where, as here, the criminal sanctions relate to the *use* of the controlled substances, the substances themselves are not ordinarily available for use as evidence. The prosecution will be obliged to rely principally, if not entirely, upon evidence of an accused's appearance and conduct, and the symptoms shown by him. And since such evidence may attend use of several, or many, drugs of a

given class or general chemical composition, the prosecutor's ability to specify the precise drug becomes difficult, or perhaps impossible.

■ On the other hand, due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence at his trial. (*In re Oliver*, 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499]; *Cooke* v. *United States*, 267 U.S. 517, 536-537 [69 L.Ed. 767, 773-774, 45 S.Ct. 390]; *In re Hess*, 45 Cal.2d 171, 175 [288 P.2d 5]; *People* v. *Pond*, 44 Cal.2d 665, 676 [284 P.2d 793]; *People* v. *Puckett*, 44 Cal.App.3d 607, 611 [118 Cal.Rptr. 884]; *People* v. *Romo*, 200 Cal.App.2d 83, 87 [19 Cal.Rptr. 179].)

Parenthetically, we note that in *felony* prosecutions an accused will be advised of the nature of the charge against him by the transcribed grand jury or preliminary hearing testimony, thus ordinarily satisfying due process requirements. (See Pen. Code, §§ 870, 938.1; *People* v. *Mosher*, 1 Cal.3d 379, 399 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Marshall*, 48 Cal.2d 394, 399, fn. 5 [309 P.2d 456].) But such information is not available to the misdemeanor defendant. And patently, the procedures for criminal discovery will not substitute for the due process requirement of notice to an accused of the charge against him. The constitutional right of a criminally accused to be adequately advised of the charge against him is absolute, while one's entitlement to discovery is addressed to the trial court's discretion. (*Pitchess* v. *Superior Court*, 11 Cal.3d 531, 538 [113 Cal.Rptr. 897, 522 P.2d 305]; *Hill* v. *Superior Court*, 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353].) Discovery will sometimes be denied where it " 'might unduly hamper the prosecution or violate some other legitimate governmental interest,' " or where an accused furnishes no " ' "plausible justification" ' " therefor, or where he might " ' "readily obtain the information through his own efforts . . . ." ' " (*Hill* v. *Superior Court, supra*, p. 817.) But, as indicated, an accused's right to due process is a constitutional guarantee (*Keeler* v. *Superior Court*, 2 Cal.3d 619, 635 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]); it may not be granted, or withheld, according to the court's discretion or the rules attending criminal discovery.

We consider whether the due process requirement has been satisfied in the charges of violation of Health and Safety Code section 11550 here under review.

As noted, each of the accuseds was charged with using a proscribed controlled substance. Such a person must be prepared to defend against

prosecutorial proof that he had used, or been under the influence of any one of them, or its "isomers, esters, ethers, salts, and salts of isomers, . . ." Having no information of the precise charge, he would be ill-prepared to establish that he had not shown the symptoms or behavior attending use of the undisclosed controlled substance. And if perchance the accused had been lawfully ingesting an otherwise forbidden drug on a doctor's prescription he might not safely rely on that statutory defense, for the trial proof might be that he had used some other controlled substance with different symptoms and effects. And there are undoubtedly other circumstances under which such an uninformed accused would be circumscribed in preparing, and presenting, his defense.

We have considered the case of *Ross* v. *Municipal Court,* 49 Cal.App.3d 575 [122 Cal.Rptr. 807], in which no legal or constitutional defect was observed in a misdemeanor complaint under Health and Safety Code section 11550, pleaded in the same general manner as those here before us. For the reasons above noted, we are unpersuaded that "prompt discovery" will satisfy the accused's due process rights. Nor do we agree with that case's rationale that "unless the accused happens to be a frequent user of several controlled substances, he would already have good reason to know the identity of the controlled substance involved." (P. 579.) It assumes the guilt of the accused, or its practical equivalent, that he had in fact used or was under the influence of a controlled substance. Such a concept of presumed guilt is foreign to our system of criminal justice. Apposite is certain language of *People* v. *Clenney,* 165 Cal.App.2d 241, 253-254 [331 P.2d 696]: "There is a presumption that the defendant in a criminal case is innocent. An innocent defendant could not determine what offense he was accused of having committed from the information filed in this case."

■ From these considerations we are impelled to hold, and do hold, that the several complaints here at issue denied the accuseds due process of law. They were not reasonably (1) advised of the charges against them, or (2) given a fair opportunity to prepare and present defenses thereto, or (3) enabled to avoid being taken by surprise at their trials. (See *In re Oliver, supra,* 333 U.S. 257; *Cooke* v. *United States, supra,* 267 U.S. 517; *In re Hess, supra,* 45 Cal.2d 171; *People* v. *Pond, supra,* 44 Cal.2d 665; *People* v. *Puckett, supra,* 44 Cal.App.3d 607; *People* v. *Romo, supra,* 200 Cal.App.2d 83.) Their demurrers should have been sustained by the municipal court, and they should have recovered judgment in the superior court.

Our holding goes no further than to declare that the Health and Safety Code section 11550 complaints at issue fall short of compliance with recognized standards of due process of law. We do not hold, or suggest, that in such prosecutions the charge must pinpoint one of the many controlled substances of the statute. It may be that among them are families, or classes, or chemical groupings, of such substances with substantially the same qualities, symptoms and behavioral effects, and that constitutional demands would be satisfied by charging use or abuse of one of the substances of that family, class or group. But lacking any expertise or knowledge of the subject, and receiving no record aid, we leave that determination to the future, and to other and possibly better advised courts.

■ " ' "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakeably appears." ' " (*In re Ricky H.,* 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204].) ■ Obedient to this principle we do not conclude that section 11550 on its face necessarily denies an accused thereunder due process. It may permit, and is construed by us to require (see *California Housing Finance Agency* v. *Elliott,* 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193]), its charging allegations to meet constitutional demands. Nor does it discriminate between members of the affected class, i.e., those using or under the influence of the proscribed controlled substances; it thus comports with the Fourteenth Amendment's equal protection clause. (See *Brown* v. *Merlo,* 8 Cal.3d 855, 861-862 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; see also *Smith* v. *Municipal Court,* 78 Cal.App.3d 592, 600-602 [144 Cal.Rptr. 504].) It is of no constitutional consequence that the Legislature saw fit to reject some controlled substances from the statute's application; "for 'The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident.' " (*In re Ricky H., supra,* 2 Cal.3d 513, 521-522; *Board of Education* v. *Watson,* 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].) ■ And for the reasons stated in, and on the authority of, *Smith* v. *Municipal Court, supra,* pages 595-600, we conclude that section 11550, by its mandatorily required minimum of 90 days of county jail confinement of its transgressors, does not impose cruel or unusual punishment.

The issue whether the superior court "erred in admitting the records of the municipal court, including the police records" is now moot and need not be determined by us.

The judgment of the superior court is reversed. That court will take further proceedings not inconsistent with our holding and the opinions we have expressed.

Racanelli, P. J., and Newsom, J., concurred.